UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KATHRYN MARSHALL                          CASE NO.  C-1-02-189

VENA MARSHALL
                                          Judge Herman Weber
        Plaintiffs
                                          Magistrate Judge Hogan
vs.

OHIO DEPARTMENT OF EDUCATION,
et al.                                    **DEFENDANTS NEW BOSTON
                                          PUBLIC SCHOOLS, LOWELL
        Defendants                        HOWARD, BERNARD TILLEY,
                                          MELINDA BURNSIDE, JERRY
                                          BENTLEY, LAURA WESSEL AND
                                          PAT POTTER'S MOTION FOR
                                          SUMMARY JUDGMENT**


        Now comes Defendants New Boston Public Schools, Lowell Howard, Bernard Tilley,

Melinda Burnside, Jerry Bentley, Laura Wessel and Pat Potter and move this Court for

summary judgment.   This motion is supported by the attached memorandum, the depositions

of plaintiffs as well as the pleadings filed herein.

                                          /s/ R. Gary Winters
                                          R.  Gary Winters  0018680
                                          Bernard W. Wharton 0063487
                                          Attorneys for Defendants
                                          McCASLIN, IMBUS & McCASLIN
                                          Suite 900 Provident Bank Building
                                          632 Vine Street
                                          Cincinnati, OH  45202-2442
                                          (513)  421-4646 Telephone
                                          (513) 421-7929 Facsimile
                                          rgwinters@mimlaw.com
                                          bwwharton@mimlaw.com
                                          **MEMORANDUM**

## I.    STATEMENT OF FACTS

### A.    Procedural History

This case has a lengthy and convoluted procedural history.  In order to save the Court time and several acres of trees, the defendants respectfully refer to this Court's calendar Order of April 13, 2005 in which the Court indicated the case would proceed on plaintiffs' Second Amended Complaint.  Pursuant to this Order, defendants filed an answer to the Amended Complaint and Correction filed December 11, 2002 and an answer to the Complaint filed March 19, 2002 pursuant to this Court's direction.

Defendants subsequently moved to dismiss plaintiffs Eddie Marshall and Sandra Marshall which motion was subsequently granted by this Court on October 4, 2005. Currently, plaintiffs remaining in this matter are Vena Marshall and Kathryn Marshall.  The remaining defendants are the New Boston Public School Board of Education, Lowell Howard, Bernard Tilley, Melinda Burnside, Jerry Bentley, Laura Wessell and Pat Potter.

### B.    Plaintiffs' Claims

Pursuant to this Court's Order, the plaintiffs' allegations are found only in their Complaint and Amended Complaint.  Furthermore, the only plaintiffs in this matter are Vena Marshall and Kathryn Marshall.  In the original Complaint, plaintiff Vena Marshall claims to have epilepsy and that the defendants refused to give plaintiff Vena Marshall special education suited to her impairment.  (See Complaint, ¶ 4.)  The original Complaint also alleged that the defendant New Boston Public Schools failed to provide any handicap facilities at the New Boston Schools.

The original Complaint goes on to allege that the New Boston Schools and individual

2

defendants had Christian chapels inside the school auditorium and locked children that would not practice Christianity in a classroom at the direction of defendant Lowell Howard, the former Superintendent of the New Boston Public Schools. The original Complaint also alleges that plaintiff Vena Marshal is harassed at school due to her religion.

The Amended Complaint adds plaintiff Kathryn Marshall as a plaintiff and alleges that defendant Lowell Howard forced plaintiff Kathryn Marshall to participate in Christian worship at the Christian chapels inside the school during school hours and that defendant Lowell Howard harassed plaintiff Kathryn Marshall because of her religion. The Amended Complaint goes also alleges that defendant Lowell Howard harassed plaintiff Kathryn Marshall by expelling her from school without good cause and depriving her of her constitutional right to worship as she chooses.

As mentioned above, these are simply allegations made by the plaintiffs. A review of the evidence before this Court will reveal that there is no substance to these allegations, and certainly no evidence to support them.

### C.    Kathryn Marshall

Kathryn Marshall's deposition was taken on February 23, 2006. She testified that she attended the New Boston Schools from 1997, when the family first moved to Portsmouth, through her initial expulsion and subsequent withdrawal in 2000. (See Kathryn Marshall Depo., pp. 15, 18, 52-53). She started in the seventh grade and left in the middle of her tenth grade year. (See Kathryn Marshall Depo., pp. 43-44). She came back at the beginning of her eleventh grade year but left again in November of that same school year. (See Kathryn Marshall Depo., p. 44).

1.     <u>Kathryn Marshall's Religious Background</u>

Plaintiff Kathryn Marshall claims that she is Jewish and has identified herself as Jewish since he was eight or nine years old.  (See Kathryn Marshall Depo., p. 20).  Her mother found out that their heritage was Jewish although her father remains a Christian.  (See Kathryn Marshall Depo., p. 22).  While she was growing up, her mother would lead the Jewish ceremonies at home and her father did not participate in them.  (See Kathryn Marshall Depo., pp. 23-24).

Plaintiff Kathryn Marshall attended a synagogue in Portsmouth for a couple of months when they moved to Portsmouth in 1997.  (See Kathryn Marshall Depo., pp 24-25).  She was not sure whether the synagogue they attended was conservative, orthodox, reform or what affiliation it had.  (See Kathryn Marshall Depo., p. 26).  She went a couple of times to a Bat Mitzvah program but did not stay in it.  (See Kathryn Marshall Depo., p. 26).   She considers herself to be Jewish but the last time she attended any congregation was when she was sixteen years old.   (See Kathryn Marshall Depo., p. 28).

2.     <u>Kathryn Marshall's Harassment Claims</u>

Plaintiff Kathryn Marshall claims that she was the subject of harassment at school because of her religion.  She alleges that she was the subject of names being directed towards her by random kids because she was Jewish.   (See Kathryn Marshall Depo., p. 54).  She goes on to allege that this harassment took place in front of Mr. Lowell Howard, the then Superintendent, while he was walking through the hallways in between classes.  (See Kathryn Marshall Depo., pp. 54-55).  She does not know that Mr. Howard heard this; she just assumes that he heard these comments.  (See Kathryn Marshall Depo., p. 55).  In response to this

4

harassment, she never made a complaint to any teacher or administrator that the students were saying improper things to her.  (See Kathryn Marshall Depo., pp. 55-58).  She made no complaints about any students making anti-semitic remarks to her.  (See Kathryn Marshall Depo., pp. 56, 87-90).  She did not make a complaint about specific students that she identified in her deposition as having conducted such harassment.   (See Kathryn Marshall Depo., p.61).

3.     School Assemblies

Another one of her allegations was that she was required to attend school assemblies called Chapels during holiday times at the school.   The Chapels occurred around Thankgiving, Christmas and Easter.  (See Kathryn Marshall Depo., p. 40).  The Chapel consisted of the choir singing with one or two solos done by selected people from the choir, and there was usually a guest speaker.  (See Kathryn Marshall Depo., p. 41).  Bernard Tilley, the Guidance Counselor, was sometimes the speaker.  (See Kathryn Marshall Depo., p. 41).  The music performed was holiday-specific music. (See Kathryn Marshall Depo., pp. 41-42).  The students were supposed to sit quietly and pay attention and were not required to sing the music themselves.  (See Kathryn Marshall Depo., p. 42).  The speakers usually read from the Bible and talked about how it would apply to one's everyday lives about how you should act. (See Kathryn Marshall Depo., p. 42).  It was a moral lesson to be drawn from the Biblical passage.  (See Kathryn Marshall Depo., p. 43).

Lowell Howard did not have any conversation with Kathryn Marshall where he told her she had to attend the Christian Chapel, nor did he have any contact with her in which he compelled her to attend the Chapel.  (See Kathryn Marshall Depo., p. 35).  The first Chapel

5

was held in 1997. (See Kathryn Marshall Depo., p. 36). At any time after that first Chapel while she was at the New Boston Schools, Kathryn Marshall never objected to a teacher or administrator about attending a Chapel. (See Kathryn Marshall Depo., pp. 36-37). She did hear from students that if you did not go to the Chapel, you would be locked in a room by yourself. (See Kathryn Marshall Depo., p. 37). She was not told that by any teacher or administrator, nor was he aware of any students who elected not to go to any of the Chapels. (See Kathryn Marshall Depo., p. 39). She did understand that she could choose not to go to the Chapel. (See Kathryn Marshall Depo., p. 39). If she had elected not to go to the Chapel, she could have done her homework in the room where she heard she would be assigned while the Chapel took place. (See Kathryn Marshall Depo., p. 40). She is not aware of whether the Chapels were ever held again after her parents first complained about them in March 2002. (See Kathryn Marshall Depo., p. 44).

<u>4.    Kathryn Marshall's Epilepsy</u>

Plaintiff has been diagnosed has having epilepsy and states that her first epileptic seizure occurred on September 11, 2001 while she was at school. (See Kathryn Marshall Depo., p. 66, 68). No medical person has told her that anybody's conduct provoked her seizure because nobody could figure out why she had the seizure. (See Kathryn Marshall Depo., pp. 67-68). Plaintiff Kathryn Marshall alleges she was told by a doctor that it was a hazard to her health if she were to fall while using the stairs at the high school. (See Kathryn Marshall Depo., p. 82). Using the stairs did not cause any problems for her. (See Kathryn Marshall Depo., p. 83). She also has stairs at home that she used to get to her bedroom on the second floor at least twice a day. (See Kathryn Marshall Depo., pp. 83-84).

6

5.    Kathryn's Marshall Expulsion

Plaintiff Kathryn Marshall had expulsion proceedings initiated against her because she was accused by her sister, plaintiff Vena Marshall, of doing drugs in a school bathroom. (See Kathryn Marshall Depo., pp. 70-71). Once the expulsion proceeding began, it ended when her parents withdrew her from the New Boston School District. (See Kathryn Marshall Depo., p. 74). She then underwent home schooling for the rest of that year before she tried to come back the next summer. (See Kathryn Marshall Depo., p. 76). After she re-enrolled, she learned that the expulsion proceeding would then resume against her. (See Kathryn Marshall Depo., p. 78). She withdrew again and continued home schooling that year and the next year. (See Kathryn Marshall Depo., pp. 78-79). She did attempt to get into the Portsmouth High School but she was not allowed into that school and did not try to get into any other surrounding school district. (See Kathryn Marshall Depo., pp. 79-80). She then re-entered the same home schooling program she had used before from the South Ridge Christian Academy. (See Kathryn Marshall Depo., p. 80).

**D.    Vena Marshall**

1.    Vena Marshall's Religious Background

Vena Marshall is currently a senior at Glenwood High School in the New Boston School District. (See Vena Marshall Depo., p. 6). She considers herself to Jewish as long as she can remember. (See Vena Marshall Depo., p. 15). She used to belong to a synagogue in Portsmouth, but only her mother currently goes there. (See Vena Marshall Depo., pp. 15-16, 18-21). Plaintiff Vena Marshall went to the synagogue every week for about a year. (See Vena Marshall Depo., p. 18). She was not Bat Mitzvahed and she did not go very far in her

7

studies for her Bat Mitzvah.  (See Vena Marshall Depo., pp. 19-20) She stopped going to the

temple when she was around thirteen years old.  She believes she started when she was nine

years old.   ((See Vena Marshall Depo., p. 20).  She has not been at temple anytime since she

was fifteen, even on the holy days.  (See Vena Marshall Depo., pp. 20-21).

2.    Vena Marshall's Harassment Claims

Plaintiff Vena Marshall alleges that she has had other students call her "Jew" in the

hallways at school.  (See Vena Marshall Depo., p. 24).  This occurred in front of the Principal,

Melinda Burnside, and Vena Marshall alleges that the student denied saying it to Ms.

Burnside.  (See Vena Marshall Depo., p. 26).  Other students used to harass her by calling her

"Jew".  (See Vena Marshall Depo., p. 28).  She never complained to a teacher or

administrator about the students.  (See Vena Marshall Depo., pp. 28-29).  She has never made

a complaint about any other person saying offensive to her.  (See Vena Marshall Depo., p.

29).  She never made a complaint to a teach or administrator about another student speaking

offensively to her and that included people saying remarks like "Jew" or things she

considered anti-semitic.  (See Vena Marshall Depo., p. 30).  She denies that any teacher or

administrator in the School District ever said anything to her that was anti-semitic.  (See Vena

Marshall Depo., p. 32).  She is not aware whether any anti-semitic comments or conduct

towards her was reported to the School Board.  (See Vena Marshall Depo., p. 36).  Other than

the incident when Ms. Burnside was present, she is not aware of any other teacher or

administrator who was present at the time someone made an anti-semitic comment to her.

(See Vena Marshall Depo., p. 37).

8

3.     School Assemblies

Plaintiff Vena Marshall alleges she was forced to attend Christian Chapels at the school.  The Chapel was a school assembly in the auditorium that all the students were called down to. (See Vena Marshall Depo., p. 54) This happened once or twice a year at Christmas and Easter. (See Vena Marshall Depo., p. 55).  The first one she recalls attending was when she was in seventh grade.  (See Vena Marshall Depo., p. 55).  The old style Chapels that she refers to included reading a verse out of the Bible, some hymns from the chorus, and either Bernard Tilley or the janitor talking about how the Biblical verse helps with everyday life and education.  (See Vena Marshall Depo., pp. 54-55).  The Chapels eventually changed so there was not as much religion in them and they became about different cultures.  (See Vena Marshall Depo., pp. 55-56).  There we no prayers, but there were songs in these new Chapels. (See Vena Marshall Depo., p. 56).  She does not know if any of the old Chapels were held after the Anti-Defamation League sent a letter to the School District objecting to the Chapels in March 2002.  (See Vena Marshall Depo., p. 58).

Vena Marshall heard from upperclassmen that if you did not attend the Chapels you would get locked in a room where you had to sit quietly.  (See Vena Marshall Depo., pp. 58-59) She never asked any teacher or administrator whether this was true.  (See Vena Marshall Depo., p. 59).  She does not remember anyone who specifically said that they were locked in a room for not attending the Chapel.  (See Vena Marshall Depo., p. 59).  Plaintiff Vena Marshall alleges she told her parents that having to attend the Chapels was offensive to her but she does not remember at all when she did that, whether it was in seventh, eighth or ninth grade. (See Vena Marshall Depo., pp. 60-61).

9

4.    Vena Marshall's Epilepsy

Plaintiff Vena Marshall was diagnosed with epilepsy halfway through her sixth grade year. (See Vena Marshall Depo., p. 83). Her doctor said she should not be going upstairs alone or swimming. (See Vena Marshall Depo., p. 83). In her sixth grade year, she had people escort her up and down stairs. (See Vena Marshall Depo., p. 84). She was not escorted up and down the stairs at school because she did not want to feel like a bother to ask people to do that for her. (See Vena Marshall Depo., p. 85). She does not know if a doctor told her that she was more likely to have a seizure on the stairs than any place else. (See Vena Marshall Depo., p. 86).

II.    **ARGUMENT OF LAW**

A.    **Summary Judgment Standard**

The plain language of Rule 56(C) of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact to an essential element of the non-moving party's case. Id. at 321. If the moving party meets this burden, then the non-moving party must set forth the specific facts showing that there is a genuine issue for trial. Fed.R.Civ., p. 56(E) Conclusory allegations are not sufficient to defeat a motion for summary judgment. McDonald v. Union Camp Corp., 898 F.3d 1162 (6th Cir. 1990).

**B.**    **Standard For Claims Under 42 U.S.C. §1983**

42 U.S.C. §1983 provides, in pertinent part, as follows:

> Every person who, under the color of any statute, ordinance, regulation,
> custom, or usage of any state . . . subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction thereof to
> the deprivation of any rights, privileges, or immunities secured by the
> Constitution and law shall be liable to the party injured.

To state a claim under §1983, a plaintiff must prove two elements: (1) that the

defendant deprived her of a right secured by the Constitution or laws of the United States; and

(2) that in so doing, the defendant acted under color of state law.   Gomez v. Toledo, 446 U.S.

635, 640 (1980).  Therefore, the threshold inquiry is whether any of the defendants allegedly

deprived the plaintiffs of a federally guaranteed right.

      **1.**    There Is No Evidence The School Board Deprived Plaintiffs Of Their
            Rights

In the instant case, there is no evidence that this occurred.  both plaintiffs testified that

they had no contact with any of the Board members of the New Boston Local School District

Board of Education.  (See Kathryn Marshall Depo. pp. 47, 102; Vena Marshall Depo. pp. 33,

36, 110-111).  Based on their deposition testimony, neither plaintiff has any evidence that any

of the Board members had any prejudice against them because they were Jewish.

      **2.**    The Individual Defendants Did Not Deprive Plaintiffs Of Their
            Rights

        **a.**    Kathryn Marshall

With respect to the individual defendants, plaintiff Kathryn Marshall cannot provide

any evidence that defendants Bernard Tilley, Melinda Burnside, Jerry Bentley, Laura Wessel

or Pat Potter did anything to harm her or that was injurious to her.  (See Kathryn Marshall

Depo., pp. 133-137). With respect to Lowell Howard, the main reason she sued him was for her expulsion. (See Kathryn Marshall Depo., p. 36). With respect to the Chapels, Mr. Howard did not force her to participate in them nor did he ever tell her that she had to attend them. (See Kathryn Marshall Depo., p. 35). With respect to the expulsion, there is no evidence that that occurred because of Mr. Howard's animus towards her religion. In fact, as plaintiff Kathryn Marshall testified, it came about because her sister and fellow plaintiff, Vena Marshall, accused her of drug use in the school bathrooms. (See Kathryn Marshall Depo., p. 70; Vena Marshall Depo., pp. 96-99). In fact, Kathryn Marshall testified that the only basis for her belief that Mr. Howard knew she was Jewish was that "everybody knew". (See Kathryn Marshall Depo., p. 36).

Plaintiff Kathryn Marshall testified that Mr. Howard never said anything to her about her religion or the fact that she was Jewish. (See Kathryn Marshall Depo., p. 49). With respect to the harassment due to her religion, she claims Mr. Howard must have overheard comments and did not do anything about it. (See Kathryn Marshall Depo., pp. 54-55). She never complained to him about it and only speculated or assumed that he heard them. (See Kathryn Marshall Depo., p. 55).

It is clear from this evidence that plaintiff Kathryn Marshall has no support for the allegations that any of the individual defendants acted to deprive her of any federally guaranteed right. The only individual defendant she can even allege anything specific about is Lowell Howard. However, she cannot testify that Mr. Howard knew that she was Jewish or acted in any way because she was Jewish. She simply can recite a litany of alleged harm to her but she cannot provide any evidence to connect it to Mr. Howard acting because of her

religion.   Therefore, her §1983 claim must fail.

b.     Vena Marshall

Plaintiff Vena Marshall cannot remember whether Mr. Bentley did anything that violated her rights or that he harbored some prejudice against her because she was Jewish. (See Vena Marshall Depo., pp. 106-107).  With resepct to Mr. Tilley, aside from his participation in the Chapels (which is dealt with in a later section of this motion), she could not recall any way that he violated her rights or injured her.  (See Vena Marshall Depo., p. 108).  With respect to Lowell Howard, she could not recall anything that Mr. Howard did to violate her rights or injure her in any manner.  (See Vena Marshall Depo., pp. 108-109).  She does not know of anything about Mr. Tilley or Mr. Howard that would cause them to have some prejudice against her because she was Jewish.  (See Vena Marshall Depo., pp. 109-110).

With respect to Ms. Potter, plaintiff Vena Marshall can only remember that she had a run-in with her centering around a class assignment, but she cannot remember anything specific about it.  (See Vena Marshall Depo., pp. 103-104).  She does not have any evidence that it was connected to her religion.  With respect to Ms. Wessel, plaintiff Vena Marshall never thought that she was picking on her because she was Jewish.  (See Vena Marshall Depo., pp. 38-39).

Again, plaintiff Vena Marshall has no evidence that any of the individual defendants deprived her of any of her federally guaranteed rights because of her religion.  Her §1983 claim must fail.

13

C.    **Defendants Did Not Violate The First Amendment Rights Of Either Plaintiff**

Plaintiffs' Complaint and Amended Complaint allege two different violations of the First Amendment rights of both plaintiffs. First, they allege that the New Boston Public Schools held a Christian Chapel inside school auditoriums and detained children who did not practice Christianity in the school for unspecified amounts of time at the discretion of the then superintendent, Lowell Howard. (See Complaint at ¶ 6; Amended Complaint at unnumbered ¶ 3). A review of the evidence in the record before this Court reveals that this allegation is baseless and has no evidentiary support. The plaintiffs also allege that both plaintiffs were harassed at school due to their religion. There is no evidence to support any liability of the defendants on this allegation either.

1.    Plaintiffs Cannot Provide Evidence To Support Their Religious Harassment Claims

Both plaintiffs Kathryn and Vena Marshall allege that other students harassed them because of their religion and contend that the defendants failed to either stop it or do anything about it. However, plaintiff Kathryn Marshall testified that she never made a complaint to any teacher or administrator that students were saying improper or anti-semitic to her. (See Kathryn Marshall Depo., pp. 55-58). Plaintiff Kathryn Marshall said that she never made a complaint about any of the specific students she identified in her deposition as having made anti-semitic or offensive remarks to her. (See Kathryn Marshall Depo., p. 61). Plaintiff Kathryn Marshall also testified that she stopped going to her synagogue because she was being made fun of at school. (See Kathryn Marshall Depo., p. 87). However, she did not make any complaint to any school teachers or administrators about those comments. (See

14

Kathryn Marshall Depo., p. 87). She also testified that in 1999 and 2000, she had acquired the nickname "Dirty Jew". (See Kathryn Marshall Depo. pp. 89-90). She never made a complaint to any teacher or administrator about that insult. (See Kathryn Marshall Depo., p. 90).

Plaintiff Vena Marshall testified that there was only one time where a student called her "Jew" in a hallway in front of defendant Melinda Burnside. (See Vena Marshall Depo., pp. 24-25). The student who she alleged said that to her denied to Ms. Burnside that he said it after Ms. Burnside called him back. (See Vena Marshall Depo., pp. 26-27). Ms. Burnside did not tell plaintiff Vena Marshall that she heard him say it, rather, plaintiff Vena Marshall complained about it to Ms. Burnside. (See Vena Marshall Depo., pp. 26-27). Plaintiff Vena Marshall later conceded in her deposition that this incident might have been with a student named Josh Webb rather than Chris Webb, and that she did not remember that Josh Webb had been suspended for three days for calling her a dirty Jew. (See Vena Marshall Depo., pp. 74-75). Plaintiff Vena Marshall also testified that she never made a complaint to a teacher or administrator about specific students who called her anti-semitic names. (See Vena Marshall Depo., pp. 28-30, 32, 36-37, 73-74, 78).

It is clear based on both plaintiffs' testimony that neither one of them ever made a complaint to a teacher or administrator about the harassment they claimed was occurring in the school. The only time the plaintiffs recalled where a teacher or administrator confronted a student or heard a student call Vena Marshall a "Jew", the administrator immediately confronted the other student who denied saying it. In fact there was another time when Melinda Burnside suspended a student for three days for calling Vena Marshall a "Dirty Jew".

15

Clearly, the evidence demonstrates that when the defendants became aware of any alleged harassment, they either confronted the student accused or actually meted out punishment to the alleged harasser.   There is no evidence that they simply ignored it.

2.    <u>Plaintiffs First Amended Rights Were Not Violated By The Chapels</u>

Plaintiffs' claims about the Chapel appear that it violated the establishment clause of the First Amendment, which provides that: "Congress shall make no law respecting an establishment of religion."  U.S. Const. Amend. I.   The establishment clause has been applied to state and local governmental action through the due process clause of the Fourteenth Amendment.  <u>See</u> <u>Everson v. Board of Education</u>, 330 U.S. 1 (1947).  A three prong test was formulated in <u>Lemon v. Kurtzman</u>, to evaluate establishment clause challenges to governmental action:

1.    the action must have a secular legislative purpose;

2.    its principal or primary effect must be that neither advances or inhibits religion; and,

3.    it must not foster an excessive government entanglement with religion.

<u>Lemon</u>, 403 U.S. at 612-13**.**

In the instant case, the testimony of plaintiffs is insufficient to establish that the Chapels held at the school violated the establishment clause of the First Amendment.  Neither plaintiff was able to testify that they were forced to attend or even participate in these Chapels, and indeed claimed that one could choose not attend the Chapel and instead attend a study hall class.  Before the Chapels were changed after the initial complaint of plaintiffs; they focused on holiday themes and songs.  There was also discussion on moral values and how they could be applied to real life situations.  Clearly these constituted secular purposes.

16

The principal effect of these Chapels neither advanced nor inhibited religion. It was a holiday celebration. Finally, the Chapels did not foster excessive government entanglement with religion. They were only held one to three times a year and as the plaintiffs have testified, it was not mandatory to attend them or participate in them. Accordingly, the plaintiffs establishment clause claim fails.

### D.    Neither Plaintiff Can Sustain Her Disability Discrimination Claim

In their Complaint and Amended Complaint, plaintiffs allege that both of them have been diagnosed with epilepsy. The original Complaint alleges that plaintiff Vena Marshall has a claim under the Americans with Disabilities Act alleging that plaintiff Vena Marshall was not provided with sufficient special education programs suited to her impairment and that the school did not have any handicap facilities. The claim for plaintiff Kathryn Marshall is unclear and simply alleges that her epileptic seizure was caused by conduct of defendant Lowell Howard and defendant Barbara Cablish.

The standard for a *prima face* case under both the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*, and §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, are essentially the same. In order to set forth a *prima face* case under either of these statutes, plaintiffs must allege either that they are or are perceived to be handicapped within the definition of each of the acts, that they are otherwise qualified for the job and that they were discriminated against on the basis of their disability. Andrews v. State of Ohio, 104 F.3d 803, 806-7 (6th Cir. 1997).

In the present case, there is no evidence that either plaintiff was discriminated against

17

by any of the defendants based on their epilepsy, nor is there evidence that any accommodations required by their epilepsy were not provided by the defendants.  Plaintiff Vena Marshall testified that she did not know if her doctor told her that she was more likely to have an epileptic seizure on the stairs than some place else.  (See Vena Marshall Depo., p. 86).   Neither plaintiff produced any evidence that the conduct of the defendants was motivated by their epilepsy or seizure disorder.  Plaintiff Kathryn Marshall admitted that no medical person told her that any defendant's conduct provoked her seizure on September 11, 2001.  (See Kathryn Marshall Depo., pp. 67-68).   Moreover, both plaintiffs testified that they used their stairs at their house as well as at school.   (See Kathryn Marshall Depo., pp. 83-84; See Vena Marshall Depo., pp. 83-84).  Furthermore, there is no expert evidence produced by plaintiffs that their epilepsy was effected by using stairs or that there was some other accommodation required for them to traverse between floors due to their epilepsy.

With respect to the claim that plaintiff Vena Marshall was not provided with a sufficient special education program suited to her impairment, not only is there any expert evidence to support this claim, plaintiffs' claim on this issue is essentially a backdoor IDEA action because plaintiff Vena Marshall alleges that her right to equal access to public education of a person with a disability was violated by the defendants.   However, instead of bringing a claim under the IDEA (Individual with Disabilities Act), plaintiffs filed a §1983 action.  Plaintiff Vena Marshall has failed to exhaust her IDEA due process rights under Ohio law.  Plaintiff Vena Marshall testified that she has never seen her current individual educational plan ("IEP") and that she was not present at the meeting when her current one was developed.  (See Vena Marshall Depo., p. 95).

Even if a plaintiff does not bring a claim under the IDEA, the law is clear that exhaustion of IDEA administrative remedies is a prerequisite for filing any federal claim for relief which is also available under the IDEA.  <u>Covington v. Knox County</u>, 205 F.3d 912 (6th Cir. 2000).  Exhausting her administrative remedies would require plaintiff Vena Marshall to have made a written request for an IDEA due process hearing and specifying the specific issues to be resolved under Ohio Administrative Code §3301-51-02(G)(2)(e).  As plaintiffs have failed to exhaust their administrative remedies, their allegations that plaintiff Vena Marshall was not provided with sufficient special education programs suited to her impairment cannot be the basis of recovery under §1983.

### III.     CONCLUSION

Based on the foregoing, plaintiffs have not produced any evidence to support the myriad of claims they have made.  They have produced no evidence under §1983 that the School Board or that the individual defendants deprived them of any federal guaranteed right.  Moreover, there is no evidence that any of the defendants took any adverse action against plaintiffs because of their religion.

Furthermore, plaintiffs cannot establish that the Chapels violated the establishment clause of the First Amendment.  They were not required to attend them or participate in them in any way.  They were permitted to go to a study hall instead of attending any the Chapels.  Finally, neither plaintiff can sustain the disability discrimination claims that they made.  There is no expert evidence to establish that they are indeed subject to a qualifying disability or that there was any accommodation required for their epilepsy that was not provided by the defendants.

In short, plaintiffs' claims fail in every respect and defendants respectfully request that this Court grant their motion for summary judgment and dismiss the plaintiffs' claims with prejudice.

/s/ R. Gary Winters
R.  Gary Winters  0018680
Bernard W. Wharton 0063487
Attorneys for Defendants
McCASLIN, IMBUS & McCASLIN
Suite 900 Provident Bank Building
632 Vine Street
Cincinnati, OH  45202-2442
(513)  421-4646 Telephone
(513) 421-7929 Facsimile
rgwinters@mimlaw.com
bwwharton@mimlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of March,  2006, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

s/ R. Gary Winters
R. Gary Winters   0018680
Bernard W. Wharton 0063487
McCASLIN, IMBUS & McCASLIN
Attorneys for Defendants
Suite 900 Provident Building
632 Vine Street
Cincinnati, OH 45202-2442
(513) 421-4646 Telephone
(513) 421-7929 Facsimile
rgwinters@mimlaw.com
bwwharton@mimlaw.com